NORA J CHOROVER (Bar No. 547352)          Filed Electronically    04/08/2016
Law Office of Nora J. Chorover
11 Green Street
Boston, MA  02130
617-477-3550

Attorney for Plaintiff
CLEAN WATER ACTION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CLEAN WATER ACTION,<br><br>                    Plaintiff,<br><br>          v.<br><br>R.H. Willson, Inc.,<br><br>                    Defendant. | Case No. 1:16-cv-10675<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br><br>(Clean Water Act,<br>33 U.S.C. §§ 1251 to 1387) |

CLEAN WATER ACTION ("CWA") by and through its counsel, hereby alleges:

**INTRODUCTION**

1.      This is a civil suit brought under the citizen suit enforcement provisions of the Clean Water Act, 33 U.S.C. § 1251, et seq. (the "Clean Water Act" or "the Act"). Plaintiff seeks declaratory judgment, injunctive relief, and other relief the Court deems appropriate for Defendant's illegal discharges of polluted stormwater to wetlands that are hydrologically connected to the Nissitissit River. R.H. Willson, Inc. ("R.H. Willson") operates an automobile salvage yard at 44 North Street, Pepperell, Massachusetts (the "Facility"). As rain or snow melt comes into contact with the Facility, it picks up pollutants and flows to the Nissitissit River.

2.      Activities that take place at industrial facilities, such as material handling and storage, are often exposed to the weather. As runoff from rain or snow melt comes into contact with these materials, it picks up pollutants and transports them to nearby storm sewer systems, rivers, lakes,

or coastal waters. Stormwater pollution is a significant source of water quality problems for the nation's waters. The Massachusetts Department of Environmental Protection has determined that stormwater runoff represents the single largest source responsible for water quality impairments in the Commonwealth's rivers, lakes, ponds, and marine waters.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States).

4.    On December 3, 2015, Plaintiff provided notice of Defendant's violations of the Act, and of its intention to file suit against Defendant (the "Notice Letter"), to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region 1; the Commissioner of the Massachusetts Department of Environmental Protection ("DEP"); and to Defendant, as required by the Act, 33 U.S.C. § 1365(b)(1)(A).

5.    More than sixty days have passed since notice was served on Defendant and the state and Federal agencies. Neither EPA nor the Commonwealth of Massachusetts has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint. This action is not barred by any prior administrative penalty under Section 309(g) of the Act, 33 U.S.C. § 1319(g).

6.    Venue is proper in the District Court of Massachusetts pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## PARTIES

7.    Plaintiff CLEAN WATER ACTION ("CWA") is a nationwide non-profit public benefit corporation organized under the laws of the District of Columbia, with offices located in Boston and Northampton, Massachusetts. CWA has approximately 50,000 members who live, recreate,

and work in and around waters of the Commonwealth of Massachusetts, including the Nissitissit River. CWA works to protect the nation's water resources. To further this goal, CWA actively seeks Federal and state agency implementation of the Act and other laws and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

8.      Members of CWA have a recreational, aesthetic and/or environmental interest in the Nissitissit River and it adjacent wetlands. One or more of such members who reside in the Town of Pepperell use and enjoy the Nissitissit River and its adjacent wetlands for recreation, sightseeing, wildlife observation and/or other activities in the vicinity of and downstream of Defendant's discharges. These members use and enjoy the waters into which Defendant has caused, is causing, and will continue to cause, pollutants to be discharged. The interests of CWA's members have been, are being, and will continue to be adversely affected by Defendant's failure to comply with the Clean Water Act, as alleged herein. The relief sought herein will redress the harms to Plaintiff caused by Defendant's activities.

9.      Continuing commission of the acts and omissions alleged herein will irreparably harm Plaintiff and the citizens of the Commonwealth of Massachusetts, for which harm they have no plain, speedy, or adequate remedy at law.

10.     Defendant R.H. Willson is a Massachusetts corporation that operates an automobile salvage yard in Pepperell, Massachusetts.

## STATUTORY BACKGROUND

11.     <u>Pollutant Discharges without a Permit are Illegal</u>. The Clean Water Act makes the discharge of pollution into waters of the United States unlawful unless the discharge is in compliance with certain statutory requirements, including the requirement that the discharge be permitted by the Federal Environmental Protection Agency ("EPA") under the National Pollutant Discharge Elimination System ("NPDES"). Sections 301(a), 402(a) and 402(p) of the Act. 33 U.S.C. §§ 1311(a), 1342(a), 1342(p).

12.    <u>EPA Has Made Stormwater Discharges from Automobile Salvage Yards Subject to the Requirements of EPA's General Industrial Stormwater Permit</u>. In order to minimize polluted stormwater discharges from industrial facilities, EPA has issued a general industrial stormwater permit ("Stormwater Permit"). EPA first issued the Stormwater Permit in 1995 and reissued the permit in 2000, 2008, and 2015. See 60 Fed. Reg. 50804 (Sept. 29, 1995); 65 Fed. Reg. 64746 (Oct. 30, 2000); 73 Fed. Reg. 56572 (Sept. 29, 2008); 80 Fed. Reg. 34403 (June 4, 2015). automobile salvage yards are subject to the requirements of this Stormwater Permit. Stormwater Permit, Appendix D, pg. D-3.

13.    <u>Automobile Salvage Yards Must Comply with the Requirements of the Stormwater Permit</u>. The Stormwater Permit requires these facilities to, among other things:

    a.    prepare a Stormwater Pollution Prevention Plan, Stormwater Permit, pg. 30;

    b.    submit to EPA an accurate "Notice of Intent" to be covered by the permit, Stormwater Permit, pg. 9;

    c.    ensure that stormwater discharges do not cause or have the reasonable potential to cause or contribute to a violation of water quality standards, Stormwater Permit, pg. 20;

    d.    ensure that pollutant control measures minimize pollutants in stormwater discharges, Stormwater Permit, pg. 14;

    e.    implement particular pollutant control measures applicable specifically to automobile salvage yards, Stormwater Permit, pgs. 123 (prior Permit pgs. 95-96);

    f.    monitor stormwater discharges at all Facility outfalls in each of the first four full quarters of permit coverage for compliance with benchmark limitations applicable specifically to automobile salvage yards, Stormwater Permit, pgs. 124 (prior Permit pg. 96);

    g.    report all monitoring results for all Facility outfalls to EPA by specified deadlines, Stormwater Permit, pgs. 48-49;

    h.   conduct corrective action after the average of four quarterly samples exceeds EPA benchmark value, Stormwater Permit, pgs. 27, 42;

    i.   conduct routine facility inspections at least quarterly (Stormwater Permit, pg. 22) and quarterly visual assessments (Stormwater Permit, pg. 24) to, among other things, sample and assess the quality of the Facility's stormwater discharges, ensure that stormwater control measures required by the Permit are functioning correctly and are adequate to minimize pollutant discharge (Stormwater Permit, pg. 14), and timely perform corrective actions when they are not, (Stormwater Permit, pgs. 22-26);

    j.   timely prepare and submit to EPA annual reports that include findings from the facility inspections and visual assessments and the documentation of corrective actions, Stormwater Permit, pgs. 49-50; and

    k.   comply with any additional state requirements, *see* Stormwater Permit, pgs. 170-171.

14.    <u>Citizens May Bring an Action to Enforce these Requirements</u>. Section 505(a)(1) and Section 505(f) of the Act provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f), § 1362(5). An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $37,500 per day, pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365 and 40 C.F.R. §§ 19.1 - 19.4.

**STATEMENT OF FACTS**

15.    Defendant owns and operates an automobile salvage yard at 44 North Street, Pepperell, Massachusetts (the "Facility").

16.    Numerous activities at the Facility take place outside and are exposed to rainfall. These include, without limitation, vehicle dismantling, used parts storage, outdoor vehicle and equipment storage, and vehicle and equipment maintenance.

17.     Industrial machinery and heavy equipment are operated, maintained, or stored at the Facility in areas exposed to stormwater flows.

18.     During every rain event, rainwater flowing over areas of the Facility becomes contaminated with pollutants. Polluted stormwater from the Facility discharges to wetlands hydrologically connected to the Nissitissit River.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Discharges of Contaminated Storm Water Without a Permit
### Section 301(a) of the Act, 33 U.S.C. § 1311(a)

19.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

20.     During rain events, rainwater flowing over exposed materials at the Facility becomes contaminated with pollutants.

21.     The contaminated rainwater then flows from the Facility into wetlands hydrologically connected to the Nissitissit River.

22.     Snowmelt at the facility becomes contaminated with pollutants and flows from the Facility into wetlands hydrologically connected to the Nissitissit River.

23.     Since at the least May 1, 2011 to the present, Defendant has been discharging polluted stormwater from the Facility into wetlands hydrologically connected to the Nissitissit River without a permit, in violation of the Clean Water Act. Sections 301(a), 402(a) and 402(p) of the Act, 33 U.S.C. §§ 1311(a), 1342(a), 1342(p).

24.     The days during the last five years on which rain, snowmelt or other factors caused stormwater to be discharged from the Facility are listed on Exhibit A hereto.

25.     Every day since May 1, 2011 to the present that Defendant discharged polluted stormwater from the Facility without a permit is a separate and distinct violation of  Section 301(a) of the Act, 33 U.S.C. § 1311(a).  These violations are ongoing and continuous.

6

## SECOND CAUSE OF ACTION

### Failure to Comply with a Permit for Industrial Stormwater Discharges
### Section 301(a) of the Act, 33 U.S.C. § 1311(a)

26.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein. Regulated industrial discharges are required at a minimum to comply with the requirements of the Stormwater Permit, which include but are not limited to the requirements set forth in paragraph 13, above.

27.    Since at the latest May 1, 2011 to the present, R.H. Willson has failed to comply with the requirements of the Stormwater Permit, including each of the requirements described at paragraph 13, above.

28.    Each and every day on which R.H. Willson has failed to comply with the Stormwater Permit is a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and Section 402 of the Act, 33 U.S.C. § 1342.

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

1.    Declare Defendant to have violated and to be in violation of the Act as alleged herein;

2.    Enjoin Defendant from discharging contaminated stormwater from the Facility;

3.    Require Defendant to implement the requirements of the Stormwater Permit;

4.    Order Defendant to pay civil penalties of up to $37,500 per day of violation, pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a) and 74 Fed. Reg. 626, 627 (2009);

5.    Order Defendant to take appropriate actions to restore the quality of navigable waters impaired by its activities;

6.    Award Plaintiff's costs (including reasonable investigative, attorney, witness, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and

7.    Award any such other and further relief as this Court may deem appropriate.

Dated: 4/8/2016                          Respectfully submitted,


                                         */s/Nora J. Chorover*
                                         NORA J. CHOROVER (Bar No. 547352)
                                         Law Office of Nora J. Chorover
                                         11 Green Street
                                         Boston, MA  02130
                                         Phone: 617-477-3550
                                         nchorover@choroverlaw.com

                                         Attorney for Plaintiff
                                         CLEAN WATER ACTION


## CLEAN WATER ACTION'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and Massachusetts District Court Local Rule 7.3, Plaintiff Clean Water Action states that it does not have a parent corporation and no publicly held company owns 10% or more of its stock.

8