**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CLEAN WATER ACTION,<br><br>        Plaintiff,<br><br>  v.<br><br>R H WILLSON, INC ,<br><br>        Defendant | Case No : |

## <u>CONSENT DECREE</u>

WHEREAS, plaintiff Clean Water Action ("Clean Water Action") is a nationwide non-profit organization working for prevention of pollution in the nation's waters;

WHEREAS, defendant R.H. WILLSON, INC ("R.H. WILLSON") operates an automobile salvage yard at 44 North Street, Pepperell, Massachusetts that is the subject of this lawsuit (the "Facility");

WHEREAS, Clean Water Action alleges that stormwater from the Facility discharges to the Nissitissit River and adjacent wetlands and waterways and that these stormwater discharges are regulated pursuant to the federal Clean Water Act (the "Act") and covered by the Final National Pollutant Discharge Elimination System ("NPDES") Multi-Sector General Permit issued by the United States Environmental Protection Agency (the "Storm Water Permit") *See* 33 U.S.C. §§ 1311(a), 1342(a), 1342(p); 65 Fed. Reg. 64746 (Oct. 30, 2000); 73 Fed. Reg 56572 (Sept. 29, 2008); 80 Fed. Reg. 34403 (June 4, 2015).

WHEREAS, on December 3, 2015, Clean Water Action provided notice of alleged violations of the Act, and of Clean Water Action's intention to file suit against R.H Willson to

1

the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region I; the Massachusetts Department of Environmental Protection; and to R.H. Willson, pursuant to Section 505 of the Act, 33 U.S.C § 1365;

WHEREAS, following receipt of the December 3, 2015 Notice, R.H. Willson has hired a consultant to assist it with Clean Water Act compliance, has prepared a Stormwater Pollution Prevention Plan and has submitted a Notice of Intent to be covered by the Storm Water Permit;

WHEREAS, R.H. Willson anticipates that these steps, together with implementation of the Best Management Practices ("BMPs") and other measures set forth herein, will enable it to comply with applicable state water quality standards, benchmark limits, and any applicable effluent standards set forth in the Storm Water Permit;

WHEREAS, R.H Willson denies the allegations of Clean Water Action that R.H. Willson has violated the Storm Water Permit or the Act;

WHEREAS, the parties have decided that it is in the best interests of all parties to resolve the litigation by agreement without adjudication of any fact, allegation, or law set forth above; and

WHEREAS, this Consent Decree ("Consent Decree") shall be submitted to the United States Department of Justice for the forty-five (45) day statutory review period pursuant to 33 U.S.C § 1365(c).

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

## INJUNCTIVE RELIEF

1. R.H. Willson agrees to operate the Facility in compliance with the applicable requirements of the Storm Water Permit and the Act, including any amendments to the Storm Water Permit or the Act that may be made during the term of this Consent Decree.

2. Defendant will "reduce and/or eliminate" its stormwater pollutant discharges "to the extent achievable using control measures (including best management practices) that are technologically available and economically practicable and achievable in light of best industry practice " (Stormwater Permit, page 14).

3. Defendant will implement control measures consistent with EPA's Industrial Stormwater Fact Sheet for Automobile Salvage Yards, including any amendments to the Fact Sheet that may be made during the term of this Consent Decree.

4. All stormwater discharges, including wetlands on the north and west of the Facility will be appropriately monitored before such stormwater enters the wetlands or creek.

5. Involvement by Clean Water Action.

a. R.H. Willson shall permit representatives of Clean Water Action to perform up to two site visits to the Facility during normal daylight business hours during each year for the two years following the Effective Date of this Consent Decree, provided that Clean Water Action notifies R.H. Willson in writing at least 48 hours in advance of any such site visit. During such site visit, Clean Water Action shall have access to and permission to copy R.H Willson's current SWPPP and any and all documentation required to be kept on site by the Storm Water Permit.

b. For the term of this Decree, R.H. Willson shall provide Clean Water Action with the following documents, by emailing them to compliance@cleanwater.org and nchorover@choroverlaw.com:

3

1    Copies of all documents R.H. Willson submits to EPA, the Commonwealth of Massachusetts and/or the Town of Pepperell concerning the Facility's storm water discharges, including but not limited to all documents and reports submitted as required by the Storm Water Permit. Such documents and reports shall be submitted contemporaneously with their submission to the governmental entity.

2.   Copies of any revisions to R.H Willson's SWPPP within 48 hours of a request by Clean Water Action.

3.   All Quarterly Visual Inspection Forms and Routine Facility Inspection Forms, including laboratory results for the samples, shall be submitted to Clean Water Action with the Annual Report.

4.   To expedite its compliance monitoring activities as provided by this Consent Decree, Clean Water Action has provided a compliance questionnaire to R.H. Willson in the form attached hereto as Exhibit A. R H. Willson shall complete the questionnaire to the best of its knowledge and provide the completed questionnaire to Clean Water Action at the same time that it provides copies of its quarterly monitoring reports.

## PAYMENT, FEES AND COSTS

6.    R.H. Willson shall pay the sum of $20,000 (the "Payment") to the Nashoba Conservation Trust for projects intended to protect or enhance water quality in the vicinity Nissitisit River Watershed or the Nashua River Watershed  The Payment shall be made in four equal installments of $5,000, according to the following schedule:

4

Payment #1 ($5,000) by no later than September 1, 2016
Payment #2 ($5,000) by no later than January 1, 2017
Payment #3 ($5,000) by no later than May 1, 2017
Payment #4 ($5,000) by no later than September 1, 2017

No portion of the Payment shall be disbursed or otherwise granted directly or indirectly to Clean Water Action Each installment shall be delivered by certified mail, return receipt requested, or by nationally recognized overnight delivery company, to: Nashoba Conservation Trust, c/o Ken Hartlage, President, P.O. Box 188, Pepperell, MA. Evidence of payment of each installment shall be provided to Clean Water Action.

7.      Within thirty (30) days after the Effective Date of this Consent Decree, R.H. Willson shall reimburse Clean Water Action in the amount of $12,500 to defray Clean Water Action's investigation fees and costs, consultant fees and costs, and attorneys' fees incurred up to the date of entry of this Consent Decree Payments shall be made by check or money order, made out to Law Office of Nora J. Chorover, and be delivered by certified mail, return receipt requested, or by nationally recognized overnight delivery company, to Nora J. Chorover, Law Office of Nora J. Chorover, 11 Green Street, Boston, MA 02130.

8.      R.H Willson shall pay to Clean Water Action a $10,000 to be placed in a Client Trust Account held for its benefit by Law Office of Nora J Chorover, to be used to reimburse Clean Water Action for reasonable fees and costs incurred to monitor R H. Willson's compliance during the two year term of this Consent Decree ("Monitoring Payment"). The Monitoring Payment shall be made in two equal installments of $5,000 each, according to the following schedule:

Monitoring Payment #1 ($5,000) within 60 days after entry of this Consent Decree
Monitoring Payment #2 ($5,000) within one year of entry of this Consent Decree

5

Each Monitoring Payment installment shall be paid by check or money order, made out to Law Office of Nora J Chorover, Client Trust Account, and be delivered by certified mail, return receipt requested, or by nationally recognized overnight delivery company, to Law Office of Nora J. Chorover, 11 Green Street, Boston, MA 02130. Nothing in this paragraph or in this Consent Decree shall restrict Clean Water Action's right to seek additional compensation for fees or costs that it incurs to enforce R.H. Willson's compliance with the terms of this Consent Decree, and nothing herein shall be construed as a waiver of R H. Willson's right to contest any such action. Any portion of the $10,000 that remains in the account at the expiration of the two year term of this Consent Decree shall be returned to R.H. Willson within 30 days of a request made by R.H. Willson, provided that such request is made within 30 days of the expiration of the Consent Decree.

9. At any time during the final six months of the term of this Consent Decree, Clean Water Action may propose to R.H. Willson that the term of the Consent Decree be extended for an additional year. Concurrent with the making of any such proposal, Clean Water Action will inform R.H Willson of the amount of monitoring funds remaining in the monitoring account. Should the parties agree to a one year extension, then they shall file a joint motion with the Court for the extension. Within 15 days of an Order by this Court granting a joint motion to extend the term of the Consent Decree by one year, R.H Willson shall make an additional monitoring payment to Clean Water Action in an amount that equals the difference between the remaining monitoring funds being held by Clean Water Action and $5,000. Neither party shall seek costs, including attorney fees, in connection with such proposal or motion Should the parties not reach agreement pursuant to this paragraph, then the Consent Decree shall expire consistent with paragraph 15.

## EFFECTIVE DATE OF CONSENT DECREE

10. The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Consent Decree by the United States Attorney General and EPA. Therefore, upon signing of this Consent Decree by the parties, Clean Water Action shall serve, or cause to be served, copies of this Consent Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5. Upon the expiration of the forty-five (45) day review period provided by 33 U.S.C. § 1365(c)(3), the parties will jointly move the Court for entry of this Consent. The date that the Court enters this Consent Decree is the Effective Date of this Consent Decree. In the event the Court does not so enter this Consent Decree in the form presented, subject to Paragraph 28 below, the provisions of this Consent Decree shall be null and void and of no effect.

## RELEASE

11. Upon the Effective Date of this Consent Decree, Clean Water Action, on its own behalf and on behalf of its members, parents, subsidiaries, affiliates, successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases R.H Willson and all its managers, members, parents, subsidiaries, affiliates, directors, officers, agents, attorneys, representatives, employees, predecessors in interest in or title to the Facility, successors, and assigns from, and waives forever all claims, whether known or unknown, for damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed in this Action, for the alleged failure to comply with the Act and the Storm Water Permit at the Facility, up to and including the date this Consent Decree is executed by the parties. Clean Water Action does not release any claims to enforce any term of this Consent Decree. Clean Water Action does not

7

release any claims for violations of the Storm Water Permit or the Act that may occur or continue after the date this Consent Decree is executed by the parties

12. R.H. Willson, on its own behalf and on behalf of its parents, subsidiaries, affiliates, predecessors in interest in or title to the Facility, successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases Clean Water Action and its members, subsidiaries, affiliates, successors, assigns, directors, officers, agents, attorneys, representatives, and employees from, and waives forever all claims, whether known or unknown, which arise from or pertain to this Action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to this Action up to and including the date this Consent Decree is executed by the parties. R.H. Willson does not release any claims to enforce any term of this Consent Decree. R.H. Willson does not release any claims for activities or events that may occur or continue after the date this Consent Decree is executed by the parties.

DISPUTE RESOLUTION

13. If a dispute under this Consent Decree arises, or either party believes that a breach of this Consent Agreement has occurred, the parties shall meet and confer within fourteen (14) calendar days of receiving written notification from the other party of a request for a meeting to determine whether a violation has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute. If the parties fail to meet and confer, or the meet-and-confer does not resolve the issue, after at least seven (7) days have passed after the meet-and-confer occurred or should have occurred, either party shall be entitled to all rights and remedies under the law, including filing a motion with the District Court of Massachusetts, which shall retain jurisdiction over this matter for the limited purposes of enforcement of the terms of this Consent Decree The parties shall be entitled to seek fees and costs incurred in any

8

such motion. Any fee determination by the Court shall be governed by the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. §1365(d) and applicable case law interpreting such provisions.

## MISCELLANEOUS PROVISIONS

14. This Consent Decree was entered by the parties as a settlement of disputed matters, and neither this Consent Decree nor any action taken pursuant to it shall be construed as an admission of any fact or liability, either expressed or implied; and this Consent Decree shall not be offered by the parties hereto or any other person as evidence of any alleged fact or liability.

15 The Term of this Consent Decree shall be two (2) years after the Effective Date.

16. This Consent Decree shall be binding on the parties and on their respective successors and assigns.

17. This Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

18. Nothing in this Consent Decree shall be construed to limit in any way R.H. Willson's obligations under any federal, state, or local law or regulation governing any activity required by this Consent Decree.

19. In the event that any of the provisions of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

20. The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.

21. The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

9

22. All agreements, covenants, representations and warranties, express or implied, oral or written, of the parties concerning the subject matter of this Consent Decree are contained herein. This Consent Decree and any attachments are made for the sole benefit of the parties, and no other person or entity shall have any rights or remedies under or by reason of this Consent Decree, unless otherwise expressly provided for therein.

23 The parties expressly understand and agree that each party has freely and voluntarily entered into this Consent Decree with and upon advice of counsel.

24 This Consent Decree and any attachments contain all of the terms and conditions agreed upon by the parties relating to the matters covered by the Consent Decree, and supersede any and all prior and contemporaneous agreements, negotiations, correspondence, understandings, and communications of the parties, whether oral or written, respecting the matters covered by this Consent Decree. This Consent Decree may be amended or modified only by a writing signed by the parties or their authorized representatives, followed by order of the Court adopting such change

25. Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Clean Water Action pursuant to this Consent Decree shall, unless otherwise provided in this Consent Decree, be sent via electronic mail to nchorover@choroverlaw.com and compliance@cleanwater.org.

Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to R.H Willson pursuant to this Consent Decree shall, unless otherwise provided in this Consent Decree, be hand delivered, sent by U.S. Mail, postage prepaid, or by nationally recognized overnight delivery company, and addressed as follows, or sent via electronic mail to R.H. Willson, Inc., Attn: Roberta Willson, 44 North Street, Pepperell, MA 01463 or sent by email to rswillson7@gmail.com.

10

Each party shall notify the other parties of any change in their contact information within fourteen (14) days of any such change.

26.     R.H. Willson does not, by entering into this Consent Decree, waive any defenses or rights with respect to any allegation or claim asserted by anyone, including Clean Water Action, of any kind or nature arising or alleged after the date R.H. Willson signs this Consent Decree, and R.H. Willson does not waive any defenses or rights with respect to any allegation or claim which may be asserted by EPA or the Commonwealth of Massachusetts.

27.     Signatures of the parties transmitted by facsimile or electronic mail are binding.

28      If for any reason the Court should decline to approve this Consent Decree in the form presented, the Consent Decree shall be null and void and the parties agree to work together in good faith to attempt to agree on modifications to this Consent Decree within thirty (30) days to make it acceptable to the Court.

This Court shall retain jurisdiction over this matter and allow this action to be reopened for the purpose of enabling the parties to this Consent Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Consent Decree.

Clean Water Action

By: _____   Dated: ___April 5, 2016_____

R.H. Willson, Inc.

By: _____   Dated: _4/4/16_____

APPROVED:

_____          June 3, 2016
United States District Judge

11